IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADAM A. LOCKE,

        **Plaintiff,**

v.

BRIAN ROOT, et al.,

        **Defendants.**

Case No. 21-3051-DDC-JPO

## MEMORANDUM AND ORDER

On February 22, 2021, pro se[1] plaintiff Adam Locke brought a *Bivens* action in federal court. Doc. 1. Plaintiff's original Complaint alleged an excessive use of force claim violating the Eighth and Fourteenth Amendments and a deliberate indifference to medical attention in violation of the Eighth Amendment against various defendants. These defendants included the United States of America, the Federal Bureau of Prisons, Captain Brian Root, Correctional Officer D. Kitts, Warden D. Hudson, Lieutenant Carl Calkins, Rea Echols, Nurse Sara Delgado, and Dr. Gregory.[2] *Id.* at 4–10. On July 23, 2021, Judge Sam A. Crow issued a Screening Order under 28 U.S.C. § 1915A(a)–(b) and § 1915(e)(2)(B) screening the Complaint for frivolous or malicious claims, failure to state a claim under which relief could be granted, or claims seeking damages from a defendant immune to suit. *See* Doc. 6 at 5–6. In his Order, Judge Crow found that plaintiff's Complaint sued all defendants in their official capacities, and thus, sovereign

---

[1]     People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2]     Plaintiff submitted his first Complaint to the court on an unapproved form with missing information. *See* Doc. 6 at 4–5. The court construes his first Complaint liberally to reflect the general claims alleged.

immunity barred plaintiff's claims. *Id.* at 8–9. The court also found plaintiff had failed to allege personal participation in the incident by defendant D. Hudson and dismissed him from the case. *Id.* at 10–12. Finally, the court found that plaintiff had failed to allege any federal constitutional violations against defendant Gregory and dismissed him from the case as well. *Id.* at 12–13. The court granted plaintiff 30 days to file an amended complaint curing the identified deficiencies. *Id.* at 13–14.

After requesting and receiving an extension of time to file a new complaint, plaintiff filed an Amended Complaint on September 13, 2021, against defendants Calkins, Delgado, Echols, Gregory, and Root. Doc. 9. Plaintiff's new claims against those defendants included three *Bivens* claims under the Eighth Amendment, ones alleging: 1) cruel and unusual punishment and use of excessive force; 2) "deliberate indifference to health and safety needs;" and 3) "deliberate indifference to [plaintiff's] serious medical needs." Doc. 9 at 4, 9–10.

On November 16, 2021, Judge Sam A. Crow ordered prison officials to prepare a *Martinez* report based on the finding that "proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of USPL." Doc. 12 at 2. On January 31, 2022, interested party USP Leavenworth filed a *Martinez* report, and also requested an in-camera inspection of the exhibits. *See* Docs. 16 (Motion for In Camera Inspection), 17 (*Martinez* report). After screening the Amended Complaint in light of the *Martinez* report, Judge Crow allowed plaintiff's claims against defendants Calkins, Echols, Delgado, and Root to proceed, but dismissed defendant Gregory from the suit because of his status as a Public Health Service employee. Doc. 22 at 2.

About a year later, defendants filed a Motion to Dismiss for Failure to State a Claim. Doc. 37. Plaintiff responded to defendants' Motion to Dismiss on November 8, 2022. Doc. 39.

Plaintiff's case was reassigned to the undersigned District Judge on November 9, 2022.  Doc. 40.  Defendants replied to plaintiff's Response on November 17, 2022 (Doc. 41) and plaintiff filed a Surreply[3] (Doc. 42).  For reasons discussed below, the court grants defendants' Motion to Dismiss.

I.      **Statement of Facts**

The facts of this case come from plaintiff's Amended Complaint.  Doc. 9.  When the court decides a Rule 12(b)(6) motion, it presumes the facts alleged in plaintiff's complaint as true.  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

Plaintiff asserts that on December 17, 2019, defendant Echols yelled for him to come into her office for staring at her inappropriately.  Doc. 9 at 5.  Plaintiff claims he did not look at defendant Echols inappropriately, and alleges she locked him in a steel cage for a period of time.  *Id.* at 6.  Then, plaintiff alleges that defendant Root and C.O. Kitts came to get him out of the cage.  *Id.*  When they did, plaintiff says that Root "rushed into the cage . . . grabbed [plaintiff] by the back of his uniform shirt and threw him against the wall, while defendant [Calkins] held [plaintiff's] arms behind his back."  *Id.* at 6–7.  Plaintiff alleges that defendant Root smashed his face into the wall twice, breaking his glasses and causing bruising, cuts, and swelling around his eye and reinjuring his lower back and neck.[4]  *Id.* at 7, 10.  Plaintiff claims that defendants

---

[3]     On December 5, 2022, plaintiff filed a Surreply without leave of court.  *See* Doc. 42.  Under D. Kan. Rule 7.1(c), parties are permitted to file a motion, a response, and a reply.  Surreplies are typically not allowed.  *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd on other grounds*, 189 F. App'x 752 (10th Cir. 2006).  Surreplies are permitted in rare cases, but not without leave of court.  *See Metzger v. City of Leawood*, 144 F. Supp. 2d 1225, 1266 (D. Kan. 2001).  Defendants' Reply does not raise new issues or evidence which would permit the filing of the Surreply.  The court therefore will disregard plaintiff's Surreply in analyzing defendants' Motion to Dismiss.  Even if the court were to consider the arguments in plaintiff's Surreply, however, it would reach the same result.

[4]     Plaintiff's neck and back pain originates from a car accident that occurred during a transfer to a state court proceeding.  Doc. 9 at 10–11.

Calkins and Echols watched the alleged "unprovoked attack by defendant Root" without stepping in to help. *Id.* at 7–8.

The next day, plaintiff asserts that he handed defendant Delgado a hand-written request for medical assistance for his cut and bruised eye, as well as anxiety attacks. *Id.* at 10. He also claims he submitted a hand-written cop-out for mental health services, where he told a doctor about the attack and its effects on his anxiety and PTSD. *Id.* He claims the doctor promised to email medical services on his behalf, but plaintiff says he received no medical attention for his neck and back pain until November 19, 2020. *Id.* at 10–11.

## II.  Motion to Dismiss

Plaintiff alleges three *Bivens* claims asserting violations of the Eighth Amendment: 1) cruel and unusual punishment through excessive use of force by defendant Root; 2) failure to protect[5] by defendants Calkins and Echols; and 3) deliberate indifference to serious medical needs by defendant Delgado. *See* Doc. 9 at 2–4. Defendants assert that the court should dismiss plaintiff's claims because they lack a remedy under the *Bivens* standard. Doc. 37. The court addresses defendants' Rule 12(b)(6) dismissal arguments for each claim, below.

### A.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

---

[5]  Plaintiff's Count II asserts he is suing defendants Echols and Calkins for deliberate indifference to plaintiff's safety and medical needs. Doc. 9 at 8. Based on the facts alleged, the court interprets his claim as a claim asserting a failure to protect plaintiff from alleged abuse.

action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). On a motion to dismiss, the court assumes that a complaint's factual allegations are true, but need not accept mere legal conclusions as true. *Id.* at 1263. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678.

### 1. *Bivens* Standard

In 1971, the Supreme Court created a federal remedy for Fourth Amendment violations when a plaintiff "can demonstrate an injury consequent upon the violation . . . of his Fourth Amendment rights[.]" *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Since *Bivens* recognized an implied private right of action for damages against federal officials who violate a citizen's Fourth Amendment rights, the Supreme Court has extended *Bivens* to reach "deliberate indifference" of a prisoner's medical needs under the Eighth Amendment, and Fifth Amendment Equal Protection claims for gender

discrimination. *Ingram v. Faruque*, 728 F.3d 1239, 1243 (10th Cir. 2013) (first citing *Davis v. Passman*, 442 U.S. 228 (1979); then citing *Carlson v. Green*, 446 U.S. 14 (1980)).

"[E]xpanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Iqbal*, 556 U.S. at 675). Indeed, the Supreme Court "consistently [has] refused to extend *Bivens* liability to any new context[.]" *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). The courts "have recognized that Congress is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (quoting *Ziglar*, 582 U.S. at 134). Our Circuit has concluded that the recent Supreme Court decision cautioned lower courts that they "expand *Bivens* claims at their own peril." *Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) (discussing *Egbert v. Boule*, 142 S. Ct. 1793 (2022)).

When determining whether to expand the *Bivens* remedy, the Supreme Court has identified two requisites. First, the case must "present[ ] 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 582 U.S. at 139). Second, the court must consider "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). The Tenth Circuit has taken this instruction to mean that *Bivens* expansion "is an action that is impermissible in virtually all circumstances." *Silva*, 45 F.4th at 1140. "[A] plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by

6

the last four decades of intervening case law." *Egbert*, 142 S. Ct. at 1809 (quoting *Ziglar*, 582 U.S. at 139).

Also, and independent of these restraints, a legislative remedial structure may foreclose a *Bivens* remedy if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence[.]" *Id*. at 1807. The courts may not second guess the effectiveness of Congress's chosen remedy or the rights afforded in the regulation because "the question . . . is a legislative determination that must be left to Congress, not the federal courts[.]" *Id.* When Congress has "explicitly declared" the regulation "to be a *substitute* for recovery directly under the Constitution" the courts must not extend a *Bivens* remedy to the aggrieved plaintiff. *Carlson*, 446 U.S. at 18 (first citing *Bivens*, 403 U.S. at 397; then citing *Davis*, 442 U.S. at 245–47).

### III.  Analysis

The court will analyze plaintiff's claims as he presents them in his Amended Complaint. Each claim applies to separate groups of defendants, so the court will address each argument in turn as it applies to the various defendants.

#### A. Plaintiff's *Bivens* Claim Against Defendant Root is Foreclosed by an Alternative Remedy.

The Prison Litigation Reform Act of 1995 ("PLRA") requires prison inmates to exhaust all available administrative remedies before commencing a *Bivens* action. The Tenth Circuit recently recognized that Congress intended for inmates to resolve their grievances through the BOP's Administrative Remedial Program ("ARP"). *See Silva*, 45 F.4th 1134. Denying plaintiff's claim for relief, the Tenth Circuit noted that Congress had established the BOP's ARP as a remedy for prisoners seeking relief from cruel and unusual punishment and excessive force. *Silva*, 45 F.4th at 1141. The federal courts have concluded repeatedly the ARP provides an

effective alternative remedy for prisoners asserting a *Bivens* claim and independently has foreclosed most *Bivens* remedies as a result. *See, e.g.*, *Malesko*, 534 U.S. at 74; *Egbert*, 142 S. Ct. at 1806; *Magallanes-Robledo v. B.O.P. Pers. of Psychology*, No. 01-1169, 2001 WL 1781900, at *1 (10th Cir. July 9, 2001).

Plaintiff argues he could not avail himself of a remedy through the ARP because defendants made the remedies unavailable to him "through machination, misrepresentation or intimidation." Doc. 39 at 2. He cites many cases, including our Circuit's decision in *Tuckel v. Grover* to support his assertion. *Id.* And indeed, our Circuit has held that an administrative remedy is not available when "'prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy.'" *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (citing *Little v. Jones*, 607 F.3d 1245, 1250 (2010)). The Tenth Circuit has established a two-part test to assess whether prison officials rendered the ARP unavailable. *Id.* at 1254. First, the inmate must show that defendant's actions "actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process" with the BOP. *Id.* Second, the inmate must show defendant's actions "would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate *failed to exhaust*." *Id.* (emphasis added).

Plaintiff's proper course of action was to file a claim under the ARP to secure relief. Plaintiff's own pleadings make it clear that he availed himself of those remedies successfully. Not only did he file initial complaints, but also, he lodged appeals of those complaints after the BOP had investigated his claims. *See* Doc. 9 at 12 (marking "yes" as his response for the question, "Have you presented all grounds in this complaint by way of BP-9, BP-10, and BP-11 grievances?"); Doc. 9-1 (Administrative Remedies). Since Congress mandated the ARP as the

primary remedy for alleged constitutional violations, it independently has foreclosed plaintiff's *Bivens* claim against defendant Root.  *Egbert*, 142 S. Ct. at 1806.  This court has no authority to sidestep Congress's intended "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP[.]"  *Malesko*, 534 U.S. at 74.  So, the court dismisses plaintiff's claim against defendant Root.

### B. Plaintiff's Claim Against Defendants Echols and Calkins Presents a New *Bivens* Context Where "Special Factors" Counsel Against Providing a Remedy.

As already referenced, the Supreme Court's ruling in *Egbert v. Boule* "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'"  142 S. Ct. at 1803 (quoting *Ziglar*, 582 U.S. at 135).  The Supreme Court recognizes just three causes of action under the *Bivens* framework:  (1) a Fourth Amendment unreasonable search and seizure violation; (2) a Fifth Amendment sex-discrimination claim; and (3) an Eighth Amendment deliberate indifference to medical care claim.  *Id.* at 1802.  For any other claims, the Court created a *Bivens* test to determine whether to expand the scope of *Bivens* claims.  *Id.*

*First*, courts must decide "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action."  *Id.* at 1803 (quoting *Ziglar*, 582 U.S. at 139).  The bar for establishing a new *Bivens* framework "is broad."  *Hernandez*, 140 S. Ct. at 743.  "[A] context [is] 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.'"  *Id.* (quoting *Ziglar*, 582 U.S. at 139).  Some of the different contexts include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk

9

of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U.S. at 139–40.

*Second*, the court must consider "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 582 U.S. at 136). If the court finds "a single sound reason to defer to Congress" then it must decline to create a remedy. *Id.* (citation and internal quotation marks omitted).

Plaintiff's failure to protect claim creates a new context for a *Bivens* claim because it does not present the same facts as *Bivens*, *Carlson*, or *Davis*. Under the second element of the test, the court finds many "special factors" counseling against extending a *Bivens* remedy to plaintiff here. As mentioned, Congress created the ARP—a process which plaintiff invoked—for the very situations that plaintiff alleges in his Complaint. This remedial structure alone is enough to foreclose plaintiff's *Bivens* action against defendants Calkins and Echols. *See Egbert*, 142 S. Ct. at 1804 ("If there are alternative remedial structures in place, 'that alone' . . . is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" (quoting *Ziglar*, 582 U.S. at 137)). But also, this administrative remedy's existence demonstrates another factor counseling hesitation: Congress's action in this area is "frequent and intense," suggesting that the courts should proceed cautiously "in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 143–44 (citation and internal quotation marks omitted). Congress has legislated the individual rights of incarcerated persons extensively, but it never has granted individual remedies for the plaintiff's alleged claims. "[W]hen Congress fails to provide a damages remedy in circumstances like these, it is much more difficult to believe that

'congressional inaction' was 'inadvertent.'" *Id.* at 144.  Since Congress created the ARP to dictate the rights and protections of incarcerated persons but has not created the remedy that plaintiff seeks in this lawsuit, the court dismisses plaintiff's failure to intervene claim against defendants Echols and Calkins.

### C. Plaintiff's Claim Against Defendant Delgado Fails for Two Reasons.

#### 1. Plaintiff's Claim Against Defendant Delgado Presents a New *Bivens* Context Where "Special Factors" Counsel Against Providing a Remedy.

Plaintiff bases his third claim on *Carlson*'s recognized *Bivens* claim for Eighth Amendment deliberate indifference to plaintiff's serious medical needs.  Doc. 9 at 4, 9.  Plaintiff's claim stems from an alleged interaction between himself and defendant Delgado after the alleged assault.  Plaintiff claims he handed defendant Delgado a request to see a medical specialist for cuts and bruises on his eye and pain in his neck and back.  *Id*. at 8.  Plaintiff alleges defendant Delgado ignored his request.  *Id.* at 10.

The Supreme Court has instructed the lower courts to look beyond "the right at issue" and "the mechanism of injury" to determine whether the claim presents a different *Bivens* context.  *Ziglar*, 582 U.S. at 139.  Any "small" yet "meaningful" differences that "modest[ly] exten[d]" the three recognized *Bivens* claims are enough to create a new context.  *Id.* at 147, 149.  Since *Carlson*, the Court has declined to extend the Eighth Amendment deliberate indifference claims to similar claims from other plaintiffs.  *See, e.g.*, *Malesko*, 534 U.S. 61; *Minneci v. Pollard*, 565 U.S. 118 (2012); *Ziglar*, 582 U.S. at 146–49.

Plaintiff's claims here meaningfully differ from those in *Carlson*.  In *Carlson*, the deliberate indifference consisted of multiple medical personnel to a prisoner's asthma attacks causing him to die from respiratory arrest.  *See Green v. Carlson*, 581 F.2d 669, 671 (7th Cir.

1978), *aff'd, Carlson v. Green*, 446 U.S. 14 (1980).  Here, plaintiff sustained cuts and bruises to his left eye and neck and back pain from the alleged assault.  Doc. 9 at 8.  Also, plaintiff alleges injury from increased anxiety attacks, PTSD, and a lack of sleep after the alleged assault.  *Id.* at 10.  Plaintiff claims defendant Delgado ignored his frequent requests for medical treatment.  *Id*.

Our Circuit's recent decision in *Silva v. United States* controls the outcome of this case.  There, plaintiff alleged a similar assault by prison guards that injured his back, legs, and left hand.  45 F.4th at 1136.  The *Silva* plaintiff based his action on a claimed violation of the Eighth Amendment, arguing that his claim fell under the *Carlson* framework and did not meaningfully expand the claim.  *Id.* at 1136–37.  Yet, our Circuit affirmed the district court's dismissal after analyzing the claims in the context of *Egbert v. Boule*, concluding that the BOP's ARP provided an adequate alternative remedy to the *Silva* plaintiff's claim.  *Id.* at 1141.  As in *Silva*, this case involves a meaningfully different context from *Carlson*.  Also like *Silva*, the court finds that the BOP has created an independent alternative remedy—the ARP—that plaintiff used to seek relief for his claims, independently foreclosing plaintiff's claim against defendant Delgado.  Thus, the court dismisses plaintiff's deliberate indifference to medical care claim under the Eighth Amendment because it arises from a meaningfully different context from *Carlson*, and special factors counsel against crafting a remedy for plaintiff's claims.

### 2. Alternatively, Defendant Delgado is Entitled to Qualified Immunity.

Also, the court dismisses plaintiff's claim against defendant Delgado for a second and independent reason:  defendant Delgado is entitled to qualified immunity.  Federal "officials enjoy 'qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties.'"  *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 864 (10th Cir. 2016) (quoting *Pahls v. Thomas*, 718 F.3d 1210,

12

1227 (10th Cir. 2013)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). Qualified immunity is "'immunity from suit rather than a mere defense to liability.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). So, courts should resolve qualified immunity questions "'at the earliest possible stage in litigation.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). To nullify a federal official's qualified immunity, plaintiff must show that: (1) the official violated plaintiff's constitutional rights; and "(2) these rights were clearly established at the time of the alleged violation." *Big Cats*, 843 F.3d at 864 (citation omitted). The court may consider either of these questions first. *Pearson*, 555 U.S. at 236.

*Estelle v. Gamble* first recognized deliberate indifference to serious medical needs as a cause of action against government officials. 429 U.S. 97, 104–05 (1976). The Supreme Court defined deliberate indifference to serious medical needs as "unnecessary and wanton infliction of pain," or "repugnant to the conscience of mankind." *Id.* at 105–06. But, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to

13

evidence deliberate indifference to serious medical needs." *Id.* at 106.  In deliberate indifference cases, plaintiff has the burden of establishing both an objective and subjective component. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  First, a plaintiff must allege a medical need that is "objectively, 'sufficiently serious'"; second the "official must have a 'sufficiently culpable state of mind[ ]' . . . of 'deliberate indifference' to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302–03 (1991)).

An objective, "sufficiently serious" medical need is one "'mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).  "[A] delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'"  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).  Substantial harm is satisfied by "'lifelong handicap, permanent loss, or considerable pain'" from the delay in care.  *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  The test is intended to limit cases only to "significant, as opposed to trivial, suffering" alleged by inmate plaintiffs.  *Id.* at 753.

Plaintiff has not alleged that he sustained a "sufficiently serious" injury requiring immediate medical attention.  Cuts and bruises do not present as a medical need so sufficiently serious that "even a lay person" would recognize the need for immediate medical care.  *Sealock*, 218 F.3d at 1209.  Also, his claims of back pain fail to qualify as "sufficiently serious" because he has not alleged facts plausibly suggesting that defendant Delgado's delay caused him "substantial harm." *Mata*, 427 F.3d at 751.  Plaintiff concedes that medical staff addressed his

psychological needs the day he requested to see a mental health specialist for his anxiety and PTSD. *See* Doc. 9 at 10 (discussing his conversation with Dr. Blair, a mental health specialist at USP Leavenworth, on December 18, 2019, the same day he submitted the request for mental health services).

Likewise, plaintiff hasn't alleged facts capable of supporting a plausible finding or inference that defendant Delgado had the requisite state of mind to meet the subjective component of the deliberate indifference analysis. The subjective component of this analysis requires the plaintiff to allege facts that defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The plaintiff's allegations must justify a factfinder "conclud[ing] that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Oxendine*, 241 F.3d at 1276 (citation and internal quotation marks omitted). Plaintiff has not alleged sufficiently that he suffered a substantial risk from lack of medical treatment. Because he did not face any substantial risk to his health, he fails to allege that defendant Delgado had the requisite subjective mindset by deliberately disregarding plaintiff's medical needs. Thus, defendant Delgado has not violated plaintiff's constitutional right. This means that defendant Delgado—even had plaintiff pleaded a cognizable *Bivens* claim—deserves qualified immunity against plaintiff's Eighth Amendment claim.

## IV.    Conclusion

The court takes the instruction to limit *Bivens* claims seriously. Plaintiff's asserted claims against three of the defendants present new contexts to which *Bivens* has never applied; and all claims have special factors counseling against extending *Bivens* to reach them. So, the court dismisses the claims against defendants Calkins, Echols, and Delgado for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Also, the court grants

15

defendant Delgado qualified immunity because plaintiff has not alleged that she violated his Eighth Amendment right from Cruel and Unusual Punishment.  And the court dismisses plaintiff's Eighth Amendment claim against defendant Root because Congress independently foreclosed plaintiff's claim through the ARP.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 37) is granted.  The court dismisses plaintiff's *Bivens* claims of cruel and unusual punishment, failure to intervene, and deliberate indifference to serious medical needs in violation of the Eighth Amendment with prejudice.  The court directs the Clerk of the Court to enter Judgment consistent with this Order.

**IT IS SO ORDERED**.

**Dated this 12th day of April, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
